[CORRECTED]

[ARGUED SEPTEMBER 9, 2013]

No. 12-5305

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

STEPHEN DEARTH and the SECOND AMENDMENT FOUNDATION, INC.,

Plaintiffs-Appellants,

v.

ERIC H. HOLDER, JR., Attorney General of the United States,

Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**SUPPLEMENTAL BRIEF FOR THE APPELLEE**

STUART F. DELERY
 *Assistant Attorney General*
RONALD C. MACHEN JR.
 *United States Attorney*
MARK B. STERN
 (202) 514-5089
MICHAEL S. RAAB
 (202) 514-4053
ANISHA S. DASGUPTA
 (202) 514-5428
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7320*
 *U.S. Department of Justice*
 *950 Pennsylvania Ave., N.W.*
 *Washington, D.C. 20530*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A. Parties and Amici.

The named plaintiffs-appellants are Stephen Dearth and the Second Amendment Foundation, Inc. The defendant-appellee is Eric Holder, Jr., Attorney General of the United States. There have been no amici curiae. Maxwell Hodgkins was a plaintiff in earlier district court proceedings in this case but is no longer a party to this action.

### B. Rulings Under Review.

The ruling under review is a Memorandum Opinion of the United States District Court for the District of Columbia, which granted defendant-appellee's motion for summary judgment. *Dearth v. Holder*, No. 09-587 (D.D.C. Sept. 27, 2012) (Wilkins, J.).

### C. Related Cases.

This case was previously before this Court. The docket number was 10-5062. The Court's decision is published as *Dearth v. Holder*, 641 F.3d 499 (D.C. Cir. 2011).

Plaintiffs have brought similar suits in the Southern District of Ohio, *Dearth v. Gonzales*, No. 06-1012, 2007 WL 1100426 (S.D. Ohio Apr. 10, 2007) (dismissing suit for lack of venue), *appeal dismissed sub. nom. Dearth v. Mukasey*, 516 F.3d 413 (6th Cir.

2008); and the Northern District of Texas, *Hodgkins v. Gonzales*, No. 06-2114 (N.D. Tex. Aug. 15, 2007) (dismissing suit for lack of venue), *appeal dismissed sub. nom. Hodgkins v. Mukasey*, 271 Fed. App'x 412 (5th Cir. 2008).

/s/Anisha S. Dasgupta
ANISHA S. DASGUPTA
ATTORNEY FOR APPELLEE

# TABLE OF CONTENTS

                                                                                                     **Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

GLOSSARY

SUMMARY OF ARGUMENT ..................................................................................... 1

ARGUMENT ................................................................................................................. 1

CONCLUSION ............................................................................................................. 6

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                                                                  **Page**

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...................................................... 1, 2, 4, 5

*Drake v. Filko*, 724 F.3d 426 (3rd Cir. 2013) ............................................................................ 2

*Entick v. Carrington*,
   2 Wils. K.B. 275, 291 (K.B. 1765) ............................................................................................ 6

*Florida v. Jardines*, 133 S. Ct. 1409 (2013) ........................................................................ 5, 6

\* *GeorgiaCarry.Org, Inc. v. Georgia*,
   687 F.3d 1244 (11th Cir. 2012),
   *cert. denied* 133 S. Ct. 856 (2013) ......................................................................................... 4, 5

*Jones v. United States*, 362 U.S. 257 (1960) .............................................................................. 5

*Kachalsky v. County of Westchester*,
   701 F.3d 81 (2d Cir. 2012),
   *cert. denied*, 133 S. Ct. 1806 (2013) ..................................................................................... 1, 2

*McDonald v. City of Chicago, Illinois*, 130 S. Ct. 3020 (2010) .................................................. 1

*Minnesota v. Carter*, 525 U.S. 83 (1998) ................................................................................... 5

*Minnesota v. Olson*, 495 U.S. 91 (1990) .................................................................................... 5

*Peruta v. County of San Diego*,
   --- F.3d ---, 2014 WL 555862 (9th Cir. Feb. 13, 2014) ............................................................. 1

*Silverman v. United States*, 365 U.S. 505 (1961) ...................................................................... 5

---

\* Authorities chiefly relied upon are marked with an asterisk.

*United States v. Masciandaro*,
   638 F.3d 458 (4th Cir.),
   *cert. denied,* 132 S. Ct. 756 (2011)...............................................................................2

*United States v. Skoien*,
   614 F.3d 638 (7th Cir. 2010) (en banc),
   *cert. denied,* 131 S. Ct. 1674 (2011) ...............................................................................2

*Woollard v. Gallagher*,
   712 F.3d 865 (4th Cir.),
   *cert. denied*, 134 S. Ct. 422 (2013)................................................................................2

**Statutes:**

18 U.S.C. § 922(a)(5)(B)...............................................................................................3

18 U.S.C. § 922(a)(9) ....................................................................................................3

18 U.S.C. § 922(b)(3)(B) ...............................................................................................3

18 U.S.C. § 925(d)(3)....................................................................................................3

**Regulations:**

27 C.F.R. § 478.29a ......................................................................................................3

27 C.F.R. § 478.99 ........................................................................................................3

**Other Authorities:**

7 *Oxford English Dictionary* 322 (2d ed. 1989) .......................................................4

*Merriam-Webster Collegiate Dictionary* 554 (10th ed. 1999) .......................................4

# GLOSSARY

JA                Joint Appendix

Pursuant to this Court's order of January 10, 2014, the Attorney General respectfully submits this supplemental brief to address the two questions posed by the Court: (1) whether non-resident Americans are "home" while visiting the United States, and (2) whether the Second Amendment extends beyond the home.

## SUMMARY OF ARGUMENT

An individual's Second Amendment interests are at their apex when that individual seeks to possess a firearm for protection of his or her home. This is not to say that the Second Amendment has no application outside the home. But the calculus changes markedly when a regulation does not infringe on "the right of law-abiding, responsible citizens to use arms in defense of hearth and home," *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008); *see also McDonald v. City of Chicago, Illinois*, 130 S. Ct. 3020, 3026 (2010) (holding invalid a Chicago ordinance that "effectively bann[ed] handgun possession by almost all private citizens who reside in the City" brought by "Chicago residents who would like to keep handguns in their homes for self-defense but are prohibited from doing so by Chicago's firearms laws.").

## ARGUMENT

"What we know from [*Heller* and *McDonald*] is that Second Amendment guarantees are at their zenith within the home. What we do not know is the scope of that right beyond the home * * *." *Kachalsky v. County of Westchester,* 701 F.3d 81, 89

(2d Cir. 2012), *cert. denied*, 133 S. Ct. 1806 (2013) (citation omitted).[1] The majority opinion in *Heller* "warns readers not to treat *Heller* as containing broader holdings than the Court set out to establish: that the Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense. What other entitlements the Second Amendment creates, and what regulations legislatures may establish, were left open." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (*en banc*), *cert. denied*, 131 S. Ct. 1674 (2011).

1. Even if the places that Mr. Dearth visits on his trips to the United States could be described as his "hearth[s] and home[s]," the challenged regulations would not impermissibly infringe on his Second Amendment interests. Plaintiffs acknowledge that Dearth "owns firearms in Canada and that there is no legal impediment to him bringing one of those firearms with him when visits the United States." Joint Appendix ("JA") 183, 207. They also acknowledge (Pl. Br. 53, JA 208)

---

[1] *See also Peruta v. County of San Diego*, --- F.3d ---, 2014 WL 555862, at *3 (9th Cir. Feb. 13, 2014) ("[N]either *Heller* nor *McDonald* speaks explicitly or precisely to the scope of the Second Amendment right outside the home or to what it takes to 'infringe' it."); *Drake v. Filko*, 724 F.3d 426, 430 (3rd Cir. 2013) (noting that it is unsettled "whether, in the public sphere, a right similar or parallel to the right articulated in *Heller* 'exists'") (cert. petition filed Jan. 9, 2014); *United States v. Masciandaro,* 638 F.3d 458, 475 (4th Cir.), *cert. denied*, 132 S. Ct. 756 (2011) ("There may or may not be a Second Amendment right in some places beyond the home, but we have no idea what those places are, what the criteria for selecting them should be, what sliding scales of scrutiny might apply to them, or any one of a number of other questions. It is not clear in what places public authorities may ban firearms altogether without shouldering the burdens of litigation."); *accord Woollard v. Gallagher*, 712 F.3d 865, 874 (4th Cir.), *cert. denied*, 134 S. Ct. 422 (2013).

that Dearth's firearms include handguns appropriate for self-defense. In addition, while visiting the United States, Mr. Dearth may borrow or rent a firearm "for temporary use for lawful sporting purposes" and use that firearm for sporting purposes and for self-protection. 18 U.S.C. § 922(a)(5)(B), (a)(9), (b)(3)(B); 27 C.F.R. §§ 478.29a, 478.99. The types of firearms "generally recognized as particularly suitable for or readily adaptable to sporting purposes," 18 U.S.C. § 925(d)(3), include almost all foreign-made handguns and most U.S.-made handguns "including the Glock," which is "the most popular handgun for self-defense," JA 202; *id.* at 183 (noting plaintiffs' acknowledgement that "many handguns—the classic self-defense weapon—also have lawful sporting purposes").

As the district court correctly explained, federal law permits "Dearth [to] rent or borrow a firearm, * * * and also [to] use the firearm for self-defense purposes," and the firearms that Dearth may rent or borrow under federal law "includ[e] many handguns—the classic self-defense weapon." JA 183. Unlike the regulations at issue in *Heller* and *McDonald,* the regulation at issue here does not preclude Dearth from possessing a gun in the houses he visits or anywhere else.

2. Although the Court need not reach the issue, Mr. Dearth is not "home" for any relevant Second Amendment purpose during his visits to the United States. He has chosen to live abroad indefinitely and to claim no place of residence in the United States. Federal law would not pose a barrier to sale if he resided out of the country, even "for extended periods of time," but "also maintain[ed] residency in a particular

3

State," or "[had] the intention of making a home in a particular State." JA 39. The houses that Dearth visits are not his home, and he has no intention of making them his home in the future.

Plaintiffs recognize that *Heller*'s references to the "home" must "possess[] a meaning narrower than the country at-large" (Pl. Suppl. Br. at 3), but they resist the "home's" traditional and common meaning of "one's place of residence," *Merriam-Webster Collegiate Dictionary* 554 (10th ed. 1999)(definition 1); *see also* 7 *Oxford English Dictionary* 322 (2d ed. 1989) (defining "the home" as "the place where a person or animal dwells" (definition 1)). Plaintiffs urge instead that the "hearth and home" referred to in *Heller* encompass "the homes of family and friends (at least when hosted overnight), hotels, boarding houses, and at lawful campsites" (Pl. Suppl. Br. 10).

"[*Heller*] went to great lengths to emphasize the special place that the home — an individual's private property—occupies in our society." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1259 (11th Cir. 2012) (citing 554 U.S. at 628-29), *cert. denied* 133 S. Ct. 856 (2013). Nothing in the Court's opinion suggests that it equated an individual's "home" with any overnight lodging.

Plaintiffs' argument also disregards the extent to which the Second Amendment "codified a pre-existing right that was circumscribed by the common law rights of an owner under property law, tort law, and criminal law," *GeorgiaCarry.Org*, 687 F.3d at 1261. Firearm possession by a visitor, far from being "elevate[d] above all other interests," 554 U.S. at 635, was subject, at a minimum, to the property owner's

4

"right to control who may enter, and whether that invited guest can be armed," 687 F.3d at 1264. The Second Amendment "did not expand, extend, or enlarge the individual right to bear arms at the expense of" the property owner's right of exclusive control, *ibid.*, or the State's ability to protect it. History thus provides no warrant for concluding that a person may assert the Second Amendment's "core" guarantee, 554 U.S. at 634, in private property that he or she is merely visiting.

Plaintiffs do not advance their argument by relying on decisions dealing with the scope of the Fourth Amendment's protection against "unreasonable searches and seizures" (Pl. Suppl. Br. 6-9), and, in any event, Fourth Amendment jurisprudence also recognizes a distinction between one's own dwelling and places that one is visiting, *see, e.g., Florida v. Jardines*, 133 S. Ct. 1409, 1415 (2013) ("[W]hen it comes to the Fourth Amendment, the home is first among equals. At the Amendment's 'very core' stands 'the right of a man to retreat into *his own home* and there be free from unreasonable governmental intrusion.'") (quoting *Silverman v. United States,* 365 U.S. 505, 511 (1961)) (emphasis added). The Supreme Court's Fourth Amendment decisions recognize that a visitor is not "home" when visiting someone else's dwelling, even if staying overnight. *See, e.g., Minnesota v. Olson*, 495 U.S. 91, 96 n.5 (1990) ("[I]f Olson had a reasonable expectation of privacy as a one-night guest, his warrantless seizure was unreasonable whether or not the upper unit at 2406 Fillmore was his home."); *Minnesota v. Carter*, 525 U.S. 83, 89 (1998) (describing *Olson* and *Jones v. United States,* 362 U.S. 257, 259 (1960), as standing for the proposition that "in some

circumstances a person may have a legitimate expectation of privacy in the house of someone else"). In contrast, in discussing the Fourth Amendment's application to a person's own home, the Court has noted that "'our law holds the property of every man so sacred, that no man can set his foot upon his neighbour's close without his leave.'" *Jardines*, 133 S. Ct. at 1415 (quoting *Entick v. Carrington,* 2 Wils. K.B. 275, 291 (K.B. 1765)).

## CONCLUSION

For the foregoing reasons and the reasons discussed in our principal brief, the judgment of the district court should be affirmed.

Respectfully submitted,

STUART F. DELERY
  *Assistant Attorney General*

RONALD C. MACHEN JR.
  *United States Attorney*

MARK B. STERN
  (202) 514-5089

MICHAEL S. RAAB
  (202) 514-4053
/s/ Anisha S. Dasgupta
ANISHA S. DASGUPTA
  (202) 514-5428
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7320*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C. 20530*

March 13, 2014

# CERTIFICATE OF COMPLIANCE WITH

# FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font.

    /s/ Anisha S. Dasgupta
ANISHA S. DASGUPTA
ATTORNEY FOR APPELLEE

# CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2014, I electronically filed the foregoing corrected brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, which constitutes service on all parties under the Court's rules.

I further certify that I will cause 8 paper copies of this brief to be filed with the Court.

/s/ Anisha S. Dasgupta
ANISHA S. DASGUPTA
ATTORNEY FOR APPELLEE