No. 12-5305
Argued September 19, 2013–Set for Reargument March 5, 2015

𝔍𝔫 𝔱𝔥𝔢 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
𝔣𝔬𝔯 𝔱𝔥𝔢 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔆𝔬𝔩𝔲𝔪𝔟𝔦𝔞

STEPHEN DEARTH, ET AL.,

Plaintiffs-Appellants,

v.

ERIC H. HOLDER, JR.,

Defendant-Appellee.

Appeal from a Judgment of the
United States District Court for the District of Columbia
The Hon. Robert L. Wilkins, District Judge
(Dist. Ct. No. 1:09-cv-00587-RLW)

APPELLANTS' SECOND SUPPLEMENTAL BRIEF

Alan Gura
GURA & POSSESSKY, PLLC
105 Oronoco Street
Suite 305
Alexandria, VA 22314
703.835.9085/703.997.7665

January 30, 2015                    *Counsel for Appellants*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## A.    *Parties and Amici*

The parties in the district court were plaintiffs Maxwell Hodgkins, Stephen Dearth, and The Second Amendment Foundation; and defendant Eric H. Holder, Jr. All parties below are parties before this Court in this appeal, other than Maxwell Hodgkins.

There were no amici below for either party below. The National Rifle Association of America, Inc., filed an amicus curiae before this Court.

## B.    *Rulings Under Review*

The decision of the District Court for the District of Columbia, per the Hon. Robert L. Wilkins, entered September 27, 2012, granting Defendant-Appellee's motion for summary judgment and denying Plaintiffs-Appellants' motion for summary judgment. The decision is reported at 893 F. Supp. 2d 59. The ruling under review and judgment being appealed are set forth in the Joint Appendix ("JA") at 172-96.

*C.*   *Related Cases*

This case has previously been before this Court, No. 10-5062, and the decision in those proceedings was published as *Dearth* v. *Holder*, 641 F.3d 499 (D.C. Cir. 2011).

Previously, Appellants litigated their claims against Appellee's predecessors-in-interest, but each case was dismissed without prejudice on venue grounds. Appellee's predecessors claimed the District of Columbia was the dispute's only possible venue. The related cases were:

*Dearth* v. *Gonzales*, U.S. Dist. Ct. Southern District of Ohio No. 06-cv-1012, *aff'd sub nom Dearth* v. *Mukasey*, 516 F.3d 413 (6th Cir. 2008).

*Hodgkins* v. *Gonzales*, U.S. Dist. Ct. Northern District of Texas No. 06-cv-2114, *aff'd sub nom Hodgkins* v. *Mukasey*, 271 Fed. Appx. 412 (5th Cir. 2008).

On January 10, 2014, this Court ordered the parties to brief, inter alia, the following question: "Whether the Second Amendment extends beyond the home." See Per Curiam Order, *Dearth* v. *Holder*, No. 12-5305, Jan. 10, 2014. Accordingly, this case is related to *Palmer* v.

*District of Columbia*, No 14-7180. *Palmer* involves the same question, arising from a challenge to the District of Columbia's total prohibition of handgun carrying, including by law-abiding, responsible individuals for the purpose of self-defense. Plaintiffs in both cases include the Second Amendment Foundation and its members, and the Defendants in both cases are federal entities. D.C. Cir. R. 28(a)(1)(C).

## CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellant Second Amendment Foundation, Inc., ("SAF") has no parent corporations. No publicly traded company owns 10% or more of its stock.

SAF, a tax-exempt organization under § 501(c)(3) of the Internal Revenue Code, is a non-profit educational foundation incorporated in 1974 under the laws of the State of Washington. SAF seeks to preserve the effectiveness of the Second Amendment through educational and legal action programs. SAF has over 650,000 members and supporters residing throughout the United States.

# TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases. . . . . . . . . . . . . . i

Corporate Disclosure Statement.. . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    Plaintiffs Allege That 18 U.S.C. § 922(a)(9) Is Facially
      Unconstitutional and Unconstitutional As Applied to Them . . . . 1

      A.    The As-Applied Challenges.. . . . . . . . . . . . . . . . . . . . . . 2

      B.    The Facial Challenges.. . . . . . . . . . . . . . . . . . . . . . . . . 4

II.   The "No Set of Circumstances" Test Cannot Apply
      in Second Amendment Cases.. . . . . . . . . . . . . . . . . . . . . . . . 10

      A.    The Second Amendment's Inherent Limitations
            Render It Incompatible with *United States v. Salerno*,
            481 U.S. 739 (1987).. . . . . . . . . . . . . . . . . . . . . . . . . . 10

      B.    Second Amendment Facial Challenges Are at Times
            Governed By the "Plainly Legitimate Sweep"/"Large
            Fraction" Test. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      C.    Overbreadth Is A Second Amendment Doctrine. . . . . . . . 18

III.  Plaintiffs' Facial Challenge to 18 U.S.C. § 922(a)(9) Would
      Pass Any Applicable Threshold Test.. . . . . . . . . . . . . . . . . . . 19

IV.  The Second Amendment Foundation Has Standing to
     Challenge 18 U.S.C. §§ 922(a)(9) and 922(b)(3). . . . . . . . . . . . . . 21

V.   Dearth Did Not Purchase Firearms Prior to Relocating
     to Canada. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

VI.  Federal Law Allows Non-Resident Americans to Bring Into the
     United States Firearms Purchased Abroad—But Only for a
     "Sporting Purpose.". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

# TABLE OF AUTHORITIES

Cases

*ACLU Found'n of S. Cal.* v. *Barr*,
  952 F.2d 457 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Aktieselskabet AF 21 November 2001* v. *Fame Jeans Inc.*,
  525 F.3d 8 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Am. Trucking Ass'ns* v. *Fed. Motor Carrier Safety Admin.*,
  724 F.3d 243 (D.C. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

*Aptheker* v. *Sec'y of State*,
  378 U.S. 500 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Dearth* v. *Holder*,
  641 F.3d 499 (D.C. Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*District of Columbia* v. *Heller*,
  554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . 10-12, 17, 19, 20

*Ezell* v. *City of Chicago*,
  651 F.3d 684 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . 14-16, 18, 24

*GeorgiaCarry.Org, Inc.* v. *Georgia*,
  687 F.3d 1244 (11th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gonzales* v. *Carhart*,
  550 U.S. 124 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

Authorities upon which we chiefly rely are marked with asterisks.

*Hightower* v. *City of Boston*,
693 F.3d 61 (1st Cir. 2012)........................ 13, 18

*\*Hunt* v. *Washington State Apple Advertising Comm'n*,
432 U.S. 333 (1977). ................................ 21

*Int'l Bhd. of Teamsters* v. *United States DOT*,
724 F.3d 206 (D.C. Cir. 2013). ...................... 23

*\*Jackson* v. *City & Cnty. of San Francisco*,
746 F.3d 953 (9th Cir. 2014). ............... 14, 16, 17, 19

*Kwong* v. *Bloomberg*,
723 F.3d 160 (2d Cir. 2013). ........................ 24

*Kwong* v. *Bloomberg*,
876 F. Supp. 2d 246 (S.D.N.Y. 2012)................. 24

*Moore* v. *Madigan*,
842 F. Supp. 2d 1092 (C.D. Ill. 2012). .............. 24

*Moore* v. *Madigan*,
702 F.3d 933 (7th Cir. 2012). ....................... 24

*Nat'l Rifle Ass'n of Am., Inc.* v. *Bureau of Alcohol,
Tobacco, Firearms & Explosives*,
700 F.3d 185 (5th Cir. 2012). ....................... 24

*\*Parker* v. *District of Columbia*,
478 F.3d 370 (D.C. Cir. 2007). ............... 11, 22, 25

*Peoples Rights Org.* v. *City of Columbus*,
152 F.3d 522 (6th Cir. 1998). ....................... 24

*Public Citizen, Inc.* v. *Nat'l Highway Traffic Safety Admin.*,
489 F.3d 1279 (D.C. Cir. 2007). ..................... 22

*Sabri* v. *United States*,
541 U.S. 600 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Silvester* v. *Harris*, No. 11-2137,
2014 U.S. Dist. LEXIS 118284 (E.D. Cal. Aug. 22, 2014). . . 24, 26

*South Coast Air Quality Mgmt. Dist.* v. *EPA*,
472 F.3d 882 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . 23

*Tyler* v. *Hillsdale Cnt'y Sheriff's Dept.*, No. 13-1876,
2014 U.S. App. LEXIS 23929 (6th Cir. Dec. 18, 2014). . . . . . . . 19

*United States* v. *Barton*,
633 F.3d 168 (3d Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . 14, 18

*United States* v. *Bena*,
664 F.3d 1180 (8th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . 13

*United States* v. *Booker*,
644 F.3d 12 (1st Cir. 2012).. . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States* v. *Decastro*,
682 F.3d 160 (2d Cir. 2012) .. . . . . . . . . . . . . . . . . . . . . . . . 13

*United States* v. *Masciandaro*,
638 F.3d 458 (4th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . 18

*United States* v. *Salerno*,
481 U.S. 739 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . 10-16, 20

*United States* v. *Stevens*,
559 U.S. 460 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Valley Forge Christian Coll.* v. *Ams. United*
*for Separation of Church and State, Inc.*,
454 U.S. 464 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wash. State Grange* v. *Wash. State Republican Party*,
552 U.S. 442 (2008). . . . . . . . . . . . . . . . . . . . . . . . . 5, 12, 14, 16-18

*Washington* v. *Glucksberg*,
521 U.S. 702 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wildearth Guardians* v. *Jewell*,
738 F.3d 298 (D.C. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Statutes, Rules and Regulations

18 U.S.C. § 922(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

18 U.S.C. § 922(a)(9) . . . . . . . . . . . . . . . . . . . . . . . . . 1-9, 19-22, 29

18 U.S.C. § 922(b)(3) . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 8, 21, 22

18 U.S.C. § 925(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

18 U.S.C. § 925(d)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

27 C.F.R. § 478.115 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

27 C.F.R. § 478.115(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

27 C.F.R. § 478.29a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Other Authorities

ATF Rul. 81-3, available at https://www.atf.gov/files/
regulations-rulings/rulings/atf-rulings/atf-
ruling-81-3.pdf (last visited Jan. 30, 2015) . . . . . . . . . . . . . . . . 26

Library of Congress, *Firearms-Control Legislation and Policy: Great Britain*, available at http://www.loc.gov/law/help/firearms-control/ greatbritain.php (last visited Jan. 25, 2015). . . . . . . . . . . . . . . . . . . 3

U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *FFL Newsletter*, Feb. 2005, available at https://www.atf.gov/ files/publications/newsletters/ffl/ffl-newsletter-2005-02.pdf (last visited Jan. 30, 2015).. . . . . . . . . . . . . . . . . . . . 27

APPELLANTS' SECOND SUPPLEMENTAL BRIEF

SUMMARY OF ARGUMENT

The Complaint sets out both facial and as-applied challenges to 18 U.S.C. § 922(a)(9).[1] Considering the statute's nature, the as-applied challenges are not subject to a threshold facial challenge test. However, were they subject to such a test, the correct test would be the "plainly legitimate sweep"/"large fraction" formulation. Regardless, Section 922(a)(9) fails both that test, and its "no set of circumstances" iteration. As Dearth, a Second Amendment Foundation ("SAF") member has standing, so does SAF, the other representational standing prongs being clearly established. Dearth did not purchase firearms prior to expatriating, and cannot bring firearms into the United States absent a "sporting purpose."

ARGUMENT

I.    PLAINTIFFS ALLEGE THAT 18 U.S.C. § 922(A)(9) IS FACIALLY UNCONSTITUTIONAL AND UNCONSTITUTIONAL AS APPLIED TO THEM.

Plaintiffs' Complaint, briefing, and argument have consistently challenged 18 U.S.C. § 922(a)(9) both facially and as-applied to

_____

[1]All further statutory references are to Title 18 of the United States Code.

American citizens who are fully qualified to possess firearms. While the District Court had no trouble identifying the as-applied challenges, it used the wrong legal standard in overlooking the facial challenges to Section 922(a)(9). The Government's protests notwithstanding, it always had notice of this claim—and addressed it directly.

A.        The As-Applied Challenges.

Plaintiffs alleged that Section 922(a)(9) violates their Second and Fifth Amendment rights by restricting access to firearms "by otherwise qualified American citizens solely on account of their residence status outside the United States." JA 15, ¶ 26; JA 16, ¶ 30; cf. JA 17, ¶ 35. The District Court correctly understood that this language "allege[s] that the laws violate the Constitution as applied to Mr. Dearth and persons similarly situated to him who do not maintain a residence in any State." JA 177.

The "similar situation" is possession of American citizenship, and full qualification under federal law to possess firearms.[2] "[R]esidence status outside the United States" means just that—not "Canadian

_____

[2]Dearth does not claim a specialized self-defense interest above that which the Second Amendment guarantees to all law-abiding, responsible Americans.

residence," or residence in a country whose firearm laws are similar to Canada's. After all, the initial lead plaintiff was an American then residing in the United Kingdom, JA 10, ¶ 1, where handguns are illegal and self-defense is an insufficient reason to obtain other arms. See Library of Congress, *Firearms-Control Legislation and Policy: Great Britain*, available at http://www.loc.gov/law/help/firearms-control/ greatbritain.php (last visited Jan. 25, 2015).

Plaintiffs often briefed their challenge to Section 922(a)(9) in as-applied terms. See, *e.g.*, Pl. Summ. Judg. Br., Dkt. 23-1, at 1 ("the government lacks any legitimate reason to restrict a citizen's constitutionally-protected access to firearms for self-defense"); *id.* at 2 (describing Section 922(a)(9) as a restriction "on Expatriated Americans' Ability to Acquire Firearms"); *id.* at 4 ("federal restrictions on firearms acquisition by expatriated Americans"); *id.* at 8 (challenging Section 922(a)(9) under: "II. Barring Law-Abiding Citizens From Acquiring Firearms for Self-Defense Is Unconstitutional").

And as there is no question that Plaintiffs are challenging Section 922(b)(3) and its enabling regulations "as applied to plaintiffs and to similarly situated individuals," JA 13, ¶ 19, namely, "to the extent

3

these are applied in such a manner as to forbid American citizens who do not reside in any state from purchasing firearms." JA 15, ¶ 28. It would be strange to construe Plaintiffs' challenge to Section 922(a)(9) (required if Plaintiffs are to obtain full relief) as excluding this focus. Indeed, the Government claimed at argument below that Plaintiffs had challenged Section 922(a)(9) "only . . . as-applied to all Americans." T. 42, l. 24-25.

B.      The Facial Challenges.

The District Court erred in refusing to acknowledge Plaintiffs' facial challenges to Section 922(a)(9). At argument, putting aside the presence of SAF, and the Complaint's plain request that Section 922(a)(9) and its enabling regulation generally be enjoined, the District Court decried the fact that Dearth "doesn't use the words 'on its face' anywhere in the complaint." T. 62, l. 10-11. The District Court later acknowledged that the complaint's prayer for relief "is more general, as it seeks generally to enjoin enforcement of Section 922(a)(9)." JA 177. But it nonetheless reasoned that because Section 922(a)(9) covers all forms of acquisition, Dearth could not set out a facial challenge because

he only tried to buy (and not borrow) guns. Moreover, this Court was alleged to have given Dearth's claim this construction. JA 177-78.

Respectfully, this analysis contains several legal errors. First, the lower court misconstrued the nature of facial challenges. There is no requirement that in order to assert a facial challenge, a plaintiff must demonstrate that the offending provision injures him in every imaginable way. For example, a plaintiff asserting a facial challenge to a restriction on the free exercise of religion need not allege that he intends to practice *all* religions. By definition, nearly every facial challenge involves plaintiffs seeking relief beyond their specific facts. This speculative aspect of facial challenges renders them disfavored, *Wash. State Grange* v. *Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008), but it does not negate their existence.

Second, this Court never addressed the scope of Plaintiffs' challenge. The previous appeal concerned only whether Dearth sustained a traceable, redressable injury-in-fact. That Section 922(a)(9) frustrated Dearth's efforts to purchase firearms sufficed to establish standing. But in describing his injury, this Court did not preclude Dearth from asserting a facial challenge.

More to the point, under Fed. R. Civ. P. 8, the question is not whether plaintiffs utter "magic words" unlocking a claim. Plaintiffs were not required to "use the words 'on its face' anywhere in the complaint." T. 62, l. 10-11. "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era . . . ." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, this Court does not read complaints in such a parsimonious light. "We continue to construe complaints liberally by interpreting ambiguous text in the complaint in the light most favorable to the plaintiff." *Aktieselskabet AF 21 November 2001* v. *Fame Jeans Inc.*, 525 F.3d 8, 20 n.8 (D.C. Cir. 2008) (citing *ACLU Found'n of S. Cal.* v. *Barr*, 952 F.2d 457, 472 (D.C. Cir. 1991)) ("The allegations . . . although not framed in precisely these terms, could be interpreted to support such a cause of action.").

The rule is one of notice pleading. Did the complaint give the Government fair notice of a facial challenge? It did. The District Court assigned it little importance, but the best evidence of whether Plaintiffs wanted Section 922(a)(9) enjoined generally, or only as-applied to themselves and others similarly situated, is indeed found in the prayer for relief. Plaintiffs sought to have the Government enjoined "from

enforcing 18 U.S.C. § 922(a)(9) and 27 CFR 478.29a;." JA 19, ¶ 1. Period, full stop.

Such a general injunction would encompass the provision of relief to Dearth and SAF's similarly-situated members, but would not be limited in that fashion. In contrast, the following paragraph seeks an injunction against enforcement of Section 922(b)(3) and its related regulations "in such a manner as to forbid American citizens who do not reside in any state from purchasing firearms." JA 19, ¶ 2. Plaintiffs whose complaints seek to have a law generally enjoined, without this form of express limitation, risk discovering that they asserted only a broad facial challenge.

The omission of limiting language in the relief requested against Section 922(a)(9), of the kind included in the relief requested against Section 922(b)(3), was conscious. The complaint's language tracked the arguments that Plaintiffs would present the District Court, and which they maintain here: Section 922(a)(9) and 27 C.F.R. § 478.29a are flatly unconstitutional for criminalizing the Second Amendment's core self-defense interest. See Pl. Summ. Judg. Br., Dkt. 23-1, at 9 ("[T]hese provisions on their face proscribe conduct that lies within the Second

Amendment's protection. They simply cannot survive judicial review.");
*id.* at 10 ("A law limiting the acquisition of firearms to "sporting"
purposes simply cannot survive, because individuals clearly have the
right to acquire firearms for *self-defense* as well—the interest that lies
at the core of the traditional right to arms, and the interest that
Plaintiffs primarily have in seeking to acquire firearms."); *id.* at 11
("The very existence of self-defense as a core traditional aspect of rights
secured by the Second Amendment bars the government from having
any interest in abridging the use of firearms for self-defense.").

The Government's claims that "the first mention of facial challenge
[to Section 922(a)(9)] comes in notices of supplemental authority," T.
42, l. 21-22, is thus wrong. If a plain reading of the complaint did not
alert the Government to the fact that Plaintiffs want Section 922(a)(9)
enjoined completely, but Section 922(b)(3) enjoined only as against
Americans residing overseas fully-qualified to possess arms, the
briefing made clear that Plaintiffs viewed Section 922(a)(9) as
unconstitutional both facially and as-applied to qualified citizens.

Indeed, its claim at argument below aside, the Government treated
the challenges to Section 922(a)(9) as in part facial. It submitted a

notice of supplemental authority arguing against the availability of a facial overbreadth challenge, see Dist Ct. Dkt. 39, and defended Section 922(a)(9)'s constitutionality on grounds that are no more or less applicable to qualified Americans than to anyone else. The Government's defense of Section 922(a)(9) never turned on any distinction between those inside and outside Plaintiffs' as-applied class.

The Government asserted that "the specific problem addressed by Section 922(a)(9) is the problem of nonresident aliens purchasing firearms from unlicensed persons and smuggling them out of the United States." Def. Reply Br., Dist. Ct. Dkt. 33, at 22. And it generally defended Section 922(a)(9) on grounds of fit, asserting that Congress valued foreign sporting tourism and believed that individuals who want firearms for sporting purposes are unlikely to be smugglers. But then, it never explained why "sporting" individuals are less likely to be smugglers than those seeking firearms for self-defense. It never sought to establish a relationship between smuggling and self-defense interests that might justify barring anyone otherwise allowed to acquire guns, from acquiring guns for self-defense. Indeed, smuggling is inherently illicit. A smuggler might just as easily lie about a sporting

purpose as he would about a self-defense interest.

Given the breadth of the as-applied class—all expatriated Americans who are not prohibited from possessing arms (or, as the Government would have it, "all Americans," T. 42, l. 24-25)—the distinction between the as-applied and facial challenges may not make a difference. But a fair reading of the complaint, even outside the required light most favorable to Plaintiffs, establishes notice of both claims.

II.   THE "NO SET OF CIRCUMSTANCES" TEST CANNOT APPLY
      IN SECOND AMENDMENT CASES.

   A.   The Second Amendment's Inherent Limitations Render It
        Incompatible with *United States* v. *Salerno*, 481 U.S. 739 (1987).

It is one thing to say that a constitutional right does not encompass certain conduct, or does not secure access to particular items or services. But the Second Amendment is unusual in that its scope either does not reach particular people, or at least, the rights it secures may be presumptively denied to such dangerous individuals. See *District of Columbia* v. *Heller*, 554 U.S. 570, 626-27 & n.26 (2008).

Accordingly, almost no gun law would fail the "no set of circumstances" test laid out in *United States* v. *Salerno*, 481 U.S. 739, 745 (1987)—including the laws struck down in *Heller*. A handgun ban,

though unconstitutional as applied to law-abiding, responsible citizens, would not offend the Second Amendment rights, of the many violent felons and mentally ill people residing in Washington, D.C. But *Salerno*, decided without any apparent regard for Second Amendment concerns, restrained neither the Supreme Court in *Heller* nor this Court in *Parker* v. *District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007). Both courts struck down Washington's handgun ban on its face. "[A] complete prohibition of [handgun] use is invalid." *Heller*, 554 U.S. at 629. This Court did "not . . . suggest that the government is absolutely barred from regulating the use and ownership of pistols." *Parker*, 478 F.3d at 399. But "[o]nce it is determined—as we have done—that handguns are 'Arms' referred to in the Second Amendment, it is not open to the District to ban them." *Id.* at 400.

Washington's functional firearms ban was also held facially invalid. The District argued that "notwithstanding the broad language of the Code, a judge would likely give the statute a narrowing construction when confronted with a self-defense justification," *id.* at 401, and one might imagine many circumstances under which a citizen might be required to render a gun inoperable. But this Court was unmoved. The

ban "amounts to a complete prohibition on the lawful use of handguns for self-defense. As such, we hold it unconstitutional." *Id.* The Supreme Court addressed the ban "as applied to [Heller's] handgun," *Heller*, 554 U.S. at 630, but the holding was made applicable to the public at large. "This makes it impossible for citizens to use them [handguns] for the core lawful purpose of self-defense and is hence unconstitutional." *Id.* The Supreme Court, too, rejected a narrowing construction that might save the statute as applied under at least some circumstances. *Id.*

B.  Second Amendment Facial Challenges Are At Times Governed By the "Plainly Legitimate Sweep"/"Large Fraction" Test.

Courts often favor a more recent facial challenge standard over *Salerno*'s "no set of circumstances" formulation, one requiring that laws have "a plainly legitimate sweep." *Wash. State Grange*, 552 U.S. at 450; see, *e.g.*, *Washington* v. *Glucksberg*, 521 U.S. 702, 739-40 & n.7 (1997) (Stevens, J., concurring in judgment) ("I do not believe the Court has ever actually applied such a strict standard, even in *Salerno* itself"). For example, laws are facially invalid if they impose undue burdens on abortion access—not in *all* cases, but "in a large fraction of relevant cases." *Gonzales* v. *Carhart*, 550 U.S. 124, 168 (2007) (citation omitted).

"Which standard applies in a typical case is a matter of dispute."
*United States* v. *Stevens*, 559 U.S. 460, 472 (2010). While the Eighth
Circuit applies *Salerno*'s formulation in Second Amendment cases, see
*United States* v. *Bena*, 664 F.3d 1180, 1182 (8th Cir. 2011), a preference
for the "plainly legitimate sweep"/"large fraction" test may be emerging
in Second Amendment cases. Describing one such facial challenge, the
Second Circuit held that the claimant would need to show that the law
fails *Salerno*'s test "or at least that it lacks a 'plainly legitimate sweep.'"
*United States* v. *Decastro*, 682 F.3d 160, 168 (2d Cir. 2012) (citation
omitted). The First Circuit twice applied the "plainly legitimate sweep"
test to a facial Second Amendment challenge without mentioning
*Salerno*. See *Hightower* v. *City of Boston*, 693 F.3d 61, 77 (1st Cir.
2012); *United States* v. *Booker*, 644 F.3d 12, 22 (1st Cir. 2012). That
court explained that while it did so "without addressing whether that
formulation or the *Salerno* formulation is controlling," it views "the
'plainly legitimate sweep' language [as] a 'refinement' of the *Salerno*
formulation." *Hightower*, 693 F.3d at 77 n.13. The Ninth Circuit has
also indicated that the "plainly legitimate sweep" test may apply in

particular facial Second Amendment challenges. *Jackson* v. *City & Cnty. of San Francisco*, 746 F.3d 953, 962 (9th Cir. 2014).

The Eleventh Circuit cited *Salerno* for the proposition that Second Amendment plaintiffs must show that the law "is unconstitutional in all applications to prevail in their facial challenge," *GeorgiaCarry.Org, Inc.* v. *Georgia*, 687 F.3d 1244, 1261 (11th Cir. 2012), but later cited *Salerno* in holding that the plaintiffs "cannot show that all *or most* applications of the [law] are unconstitutional," *id.* at 1264 (emphasis added). In language that might better reference a "general sweep"/ "large fraction" test, the court then concluded that "[p]laintiffs' facial challenge fails because the [law] is capable of numerous constitutional applications." *Id.* at 1266 (citing *Salerno*).

The Third and Seventh Circuits have both adopted the "all of its applications" test, but did so by citing to *Grange*. See *Ezell* v. *City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011); *United States* v. *Barton*, 633 F.3d 168, 172 (3d Cir. 2011). The Seventh Circuit explained that *Salerno*'s test, "[s]tated differently," means that "[a] person to whom a statute properly applies can't obtain relief based on arguments that a

differently situated person might present." *Ezell*, 651 F.3d at 698 (quotation omitted).

Unlike *Salerno*'s formulation, the "plainly legitimate sweep" or "large fraction" test can be applied consistently to Second Amendment cases. *Salerno* logically answers challenges to laws disarming classes of dangerous individuals, but it cannot apply to laws targeting particular conduct or arms in which at least some individuals would have a constitutional interest. For example, Washington, D.C.'s handgun ban would not have been unconstitutional as applied to violent felons, but it can be said to have failed for lack of a "plainly legitimate sweep" considering its application against the entire population.

For *Salerno*'s formulation to function in cases that challenge laws restricting conduct or access to particular implements, courts must first remove the universe of disqualified individuals from the equation. In *Ezell*, for example, "a facial challenge like this one" could not succeed without showing that "the statute is wholly invalid and cannot be applied to *anyone*." *Ezell*, 651 F.3d at 698. But the court enjoined a gun-range ban that it viewed as impacting "every Chicagoan's Second Amendment right," *id.* at 699, and frustrating the rights of "the 'law-

abiding, responsible citizens' of Chicago," *id.* at 708. The court would presumably have upheld a law barring violent felons from gun ranges.

And considering that the "plainly legitimate sweep"/"large fraction" formulation already applies in some constitutional contexts, it would be inappropriate to single out the right to arms for disparate treatment by subjecting Second Amendment claimants to a more exacting standard. "[W]e know of no principled basis on which to create a hierarchy of constitutional values . . . ." *Valley Forge Christian Coll.* v. *Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 484 (1982).[3]

But this is not to say that a threshold facial challenge limitation, be it the formulation found in *Salerno*, *Grange*, or some other source, must apply in all cases, or all Second Amendment cases. The Ninth Circuit rejected San Francisco's request to apply the "plainly legitimate sweep" test in a case challenging an ordinance requiring that handguns be locked in a container when not on one's person. *Jackson*, supra.

————————————

[3]Plaintiffs' international travel right claim, if subject to a threshold facial challenge test, would trigger the "plainly legitimate sweep" test. See *Aptheker* v. *Sec'y of State*, 378 U.S. 500, 514 (1964) (statute "is unconstitutional on its face" in that it "sweeps too widely and too indiscriminately across the liberty guaranteed in the Fifth Amendment"); *id.* at 516-17.

The court explained that a facial challenge threshold test reflects two concerns that ordinarily cause facial challenges to be disfavored. "First, when considering 'complex and comprehensive legislation,' we may not 'resolve questions of constitutionality with respect to each potential situation that might develop . . . .'" *Jackson*, 746 F.3d at 962 (quoting *Carhart*, 550 U.S. at 167-68). "Second, facial challenges 'often rest on speculation'" and might foreclose prospects of developing saving constructions. *Id.* (quoting *Grange*, 552 U.S. at 450).

> Jackson's facial challenge . . . raises neither concern. First, section 4512 is not an example of "complex and comprehensive legislation" which may be constitutional in a broad swath of cases. Either it is a permissible burden on the Second Amendment right to "keep and bear arms" or it is not. Second . . . the constitutionality of section 4512 does not turn on how San Francisco chooses to enforce it. The statute constitutes a flat prohibition on keeping unsecured handguns in the home. On its face, it does not give courts the opportunity to construe the prohibition narrowly or accord the prohibition "a limiting construction to avoid constitutional questions."

*Id.* (quoting *Grange*, 552 U.S. at 450).

*Jackson* might explain *Heller*'s logic in foregoing any sort of threshold facial challenge test. The laws challenged in that case were fairly straightforward, and both this Court and the Supreme Court rejected claims of narrowing construction.

C.   Overbreadth is a Second Amendment Doctrine.

Another form of facial challenge allows that "a law may be overturned as impermissibly overbroad because a 'substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'" *Grange*, 552 U.S. at 450 n.6 (citation omitted); *Ezell*, 651 F.3d at 698 n.8.

While most courts have rejected this type of facial challenge under the Second Amendment, see *Hightower*, 693 F.3d at 82-82 (collecting cases), many have done so under the erroneous belief that such challenges are limited to the First Amendment. See, *e.g.*, *Barton*, 633 F.3d at172 n.3; *United States* v. *Masciandaro*, 638 F.3d 458, 474 (4th Cir. 2011). As the First Circuit noted, *Hightower*, 693 F.3d at 82, the Supreme Court has a wider view of overbreadth challenges. Although remaining "reticen[t]" to entertain such challenges, "we have recognized the validity of facial attacks alleging overbreadth (though not necessarily using that term)" in cases involving ""free speech, *right to travel*, abortion [and] legislation under § 5 of the Fourteenth Amendment." *Sabri* v. *United States*, 541 U.S. 600, 609-10 (2004). Considering that the Second Amendment secures fundamental rights

no less important than those listed in *Sabri*, and the ceaseless efforts in some quarters to regulate it out of existence, overbreadth challenges should be allowed in the Second Amendment context.[4]

III. PLAINTIFFS' FACIAL CHALLENGE TO 18 U.S.C. § 922(A)(9) WOULD PASS ANY APPLICABLE THRESHOLD TEST.

For the reasons given in *Jackson*, this Court should not apply any threshold test to Plaintiffs' facial challenges against Section 922(a)(9). Like *Jackson*'s storage ordinance, Section 922(a)(9) is neither complex, nor does it admit of any narrowing construction. The statute is written in terms of what it allows—a "sporting purpose"—to the exclusion of everything else. That either violates the Second Amendment, or it does not. And the Government has already made clear that the law means exactly what it says. Its argument left no room for visitors to acquire guns for the purpose of self-defense, unless they lie about their intent. As in *Jackson* and *Heller*, the traditional concerns underlying threshold facial challenge tests are absent.

Should the Court apply a threshold facial challenge test, the correct

---

[4]Overbreadth as used in this discussion should not be confused with the concept of overbreadth as is inherent in the tailoring aspects of heightened scrutiny. See *Tyler* v. *Hillsdale Cnt'y Sheriff's Dept.*, No. 13-1876, 2014 U.S. App. LEXIS 23929, *52 (6th Cir. Dec. 18, 2014).

test under both the Second and Fifth Amendments would be the "plainly legitimate sweep"/"large fraction" formulation—which Section 922(a)(9) would fail. The Government claims that Section 922(a)(9)'s purpose is to combat the smuggling of arms abroad by visiting aliens. But it cannot be that alien putative gun-smugglers account for a meaningful portion of all visitors to the United States. Indeed, the Government related that it convicted only 143 alien arms smugglers over a ten-year period. See Appellants' Br. 37. Even if Section 922(a)(9) could be said to advance the purpose of curtailing arms smuggling (a debatable point, as smugglers could be expected to smuggle regardless of their asserted purpose in acquiring arms), prohibiting *all* visitors from acquiring arms for self-defense, including all expatriated citizens, sweeps too broadly.

Indeed, Section 922(a)(9) is the rare gun law that would even fail *Salerno*'s "no set of circumstances" formulation. "[T]he inherent right of self-defense has been central to the Second Amendment right." *Heller*, 554 U.S. at 628. If an individual has a Second Amendment right at all, that right inherently secures "the core lawful  purpose of self-defense," *Heller*, 554 U.S. at 630, and the Government thus cannot condition the

receipt of firearms on the acquirer having, exclusively, a "sporting purpose." Indeed, even in the absence of a Second Amendment right, Section 922(a)(9) would fail the rational basis test, as there is no reason to suppose that visiting aliens who wish to acquire guns for illicit smuggling purposes will not simply lie about having a "sporting purpose" to obtain the guns that they would smuggle.

IV.  THE SECOND AMENDMENT FOUNDATION HAS STANDING TO CHALLENGE 18 U.S.C. §§ 922(A)(9) AND 922(B)(3).

Mindful that Plaintiffs are not to address "any issues previously briefed in this court," Order, Dec. 22, 2014, SAF has little to add to its arguments that it plainly meets the associational standing requirements of *Hunt* v. *Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977). See Appellants' Br. 25-26; Reply Br. 5-6.

> An association has standing to sue under Article III of the Constitution of the United States only if (1) at least one of its members would have standing to sue in his own right; (2) the interest it seeks to protect is germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the member to participate in the lawsuit.

*Am. Trucking Ass'ns* v. *Fed. Motor Carrier Safety Admin.*, 724 F.3d 243, 247 (D.C. Cir. 2013) (quotation omitted).

Dearth is a SAF member. JA 34;[5] see Appellants' Br. 26; Def. Br., Dist. Ct. Dkt. 25, at 44 n.36 (conceding that Dearth is an "identified SAF member with standing to sue"). The previous appeal established that he has standing to challenge both Sections 922(a)(9) and 922(b)(3). *Dearth* v. *Holder*, 641 F.3d 499, 500 (D.C. Cir. 2011). The complaint averred that but for these provisions, Dearth would "purchase firearms within the United States," JA 11, ¶ 11, an act encumbered by Section 922(b)(3), "which he would access for lawful sporting purposes as well as for other purposes, including self-defense," JA 11, ¶ 11, a prohibited condition under Section 922(a)(9).

Had Dearth lacked standing to challenge either provision, he would have lacked standing to challenge both provisions. But this Court held that "the requirement[] . . . of redressability [is] clearly met." *Dearth*, 641 F.3d at 501; see also *Parker*, 478 F.3d at 376 (because licensing and trigger lock requirements "would amount to further conditions on the certificate Heller desires, Heller's standing to pursue the license denial

---

[5]"[A]ffidavits filed in court" are a form of evidence that may establish membership for representational standing purposes. *Public Citizen, Inc.* v. *Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1289 (D.C. Cir. 2007).

would subsume these other claims too."). Other SAF members likewise reside overseas, and would exercise Second Amendment rights on return visits to the United States. JA 34.

This Court routinely accepts that the second two prongs of associational standing are satisfied. See, *e.g.*, *Am. Trucking*, 724 F.3d at 247 ("the national association has an obvious interest"); *Wildearth Guardians* v. *Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013) ("We have little difficulty concluding that the latter two elements of associational standing are met"); *South Coast Air Quality Mgmt. Dist.* v. *EPA*, 472 F.3d 882, 895 (D.C. Cir. 2006) ("Only the first element of standing can seriously be challenged here."); *Int'l Bhd. of Teamsters* v. *United States DOT*, 724 F.3d 206, 212 (D.C. Cir. 2013). And there is no reason to dwell on the second two prongs here. SAF's interest in advancing its members' Second Amendment rights cannot be disputed. Nor is there any requirement for any SAF member to participate in the case, which this Court is prepared to decide, one way or another, as a matter of law.

Courts considering SAF's associational standing routinely find that SAF has standing upon finding that at least one of its members (typically, as here, another plaintiff in the case) has standing. "The

Second Amendment Foundation and the Illinois Rifle Association have many members who reside in Chicago and easily meet the requirements for associational standing." *Ezell*, 651 F.3d at 696; see also *Silvester* v. *Harris*, No. 11-2137, 2014 U.S. Dist. LEXIS 118284, at *22-*23 (E.D. Cal. Aug. 22, 2014); *Moore* v. *Madigan*, 842 F. Supp. 2d 1092, 1098 (C.D. Ill.), *rev'd on other grounds*, 702 F.3d 933 (7th Cir. 2012).[6] The same holds true for other gun rights membership organizations. See, *e.g.*, *Nat'l Rifle Ass'n of Am., Inc.* v. *Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 191 & n.5 (5th Cir. 2012); *Peoples Rights Org.* v. *City of Columbus*, 152 F.3d 522, 531 (6th Cir. 1998).

The Government originally challenged SAF's standing only "to the extent that SAF's claims are premised on organizational standing, rather than representational standing to sue on behalf of Plaintiff Dearth." Def. Br., Dist. Ct. Dkt. 25, at 43. SAF brings this action on behalf of other members as well, but that is beside the point. Having

---

[6]The only apparent exception occurred under the Second Circuit's unique (erroneous) view that representational standing is unavailable in actions under 42 U.S.C. § 1983. See *Kwong* v. *Bloomberg*, 876 F. Supp. 2d 246, 252 (S.D.N.Y. 2012), *aff'd*, 723 F.3d 160 (2d Cir. 2013).

identified at least one member with standing, and considering that, as in virtually all representational standing cases, there can be no doubt as to the other two *Hunt* prongs, SAF's standing is established.

V.  DEARTH DID NOT PURCHASE FIREARMS PRIOR TO RELOCATING TO CANADA.

Dearth did not purchase any firearms prior to leaving the United States. He did not develop an interest in acquiring firearms until after establishing his family, and himself as an adult, in Canada. While Plaintiffs appreciate the limited opportunities afforded by Section 925(d)(4) to individuals who happened to purchase firearms before expatriating, it would be unfair and unusual to require individuals to anticipate that they would develop an interest in exercising their rights, and in what manner fully, prior to departing the country.

Moreover, as with other constitutionally-protected articles (books, contraceptives, etc.), people's firearms needs, and the firearms market, evolve over time. An individual who has pre-purchased a constitutionally-protected item does not thereby forfeit the right to acquire others in the future as circumstances develop. Cf. *Parker*, 478 F.3d at 400 (describing as "frivolous" argument that banning only one

type of protected firearm is constitutional); *Silvester*, 2014 U.S. Dist.

LEXIS 118284, at *75 n.33 ("that [plaintiffs] have been able to exercise

their Second Amendment right with respect to at least one firearm does

not mean that they have diminished rights under the Second

Amendment [to other arms].").

VI.  FEDERAL LAW ALLOWS NON-RESIDENT AMERICANS TO BRING
     FIREARMS PURCHASED ABROAD ON TEMPORARY VISITS TO THE
     UNITED STATES—BUT ONLY FOR A "SPORTING PURPOSE."

Non-resident Americans bringing firearms acquired abroad into the

United States must comply with different rules, depending on whether

they are establishing a residence in the United States or visiting

temporarily.

Americans wishing to return to the United States on a permanent

basis are not barred from importing firearms by Section 922(a)(3), as

they do not yet have a state of residence. However, they must apply to

import the firearms, for personal use only on ATF Form 6, and the

firearms must comply with the requirements of Section 925(d),

including the "sporting purpose" test. *See generally* ATF Rul. 81-3,

available at https://www.atf.gov/files/regulations-rulings/rulings/

atf-rulings/atf-ruling-81-3.pdf (last visited Jan. 30, 2015) ("nonresident

26

U.S. citizen returning to the United States after having resided outside of the United States").

In contrast,

> Firearms and ammunition are not imported into the United States, and the provisions of this subpart shall not apply, when such firearms and ammunition are brought into the United States by:

> (1)  A nonresident of the United States *for legitimate hunting or lawful sporting purposes*, and such firearms and such ammunition as remains following such shooting activity are to be taken back out of the territorial limits of the United States by such person upon conclusion of the shooting activity;

27 C.F.R. § 478.115 (emphasis added).

As used here, "sporting purpose" refers to the purpose that the nonresident has in bringing the firearm and ammunition. It does not refer to the "sporting purpose" test for physical characteristics of the firearm referenced in Section 925(d). The logic of the "exempt importation" regulation is that firearms temporarily imported "are not imported into the United States" and are thus excluded from Section 925(d)'s importation requirements. The Government's brief may have confused the two concepts, Appellee's Br. 9, but ATF does not. Under 27 C.F.R. § 478.115(d), "firearms that are temporarily imported are not required to meet sporting purpose requirements." U.S. Dep't of Justice, Bureau of

Alcohol, Tobacco, Firearms and Explosives, *FFL Newsletter*, Feb. 2005, at 5, available at https://www.atf.gov/files/publications/newsletters/ffl/ffl-newsletter-2005-02.pdf (last visited Jan. 30, 2015).

The Government also takes the position that non-resident Americans "may use" firearms temporarily brought into the United States under 27 C.F.R. § 478.115(d) "for self-protection," Appellee's Br. 9; *id.* at 18, meaning, that no crime is apparently committed if arms brought into the country for a sporting purpose happen to be used in self-defense. But the rule plainly requires that individuals have a "sporting purpose," e.g., a hunting excursion or organized shooting competition, to bring the firearm into the country. If the Government wished to allow individuals to temporarily bring in firearms and ammunition for the purpose of self-defense, its rule would say so.

Plaintiffs have previously argued that other countries, including Canada, do not guarantee a right to arms co-extensive with the Second Amendment. Many guns to which Americans have a fundamental right in this country are simply not available overseas. Dearth, for example, cannot obtain in Canada many handguns that he would legally use in the United States. See Appellants' Br. 54; T. 60, l. 2-14; Pl. Br, Dist. Ct.

Dkt. 28, at 9-10. But even were that not the case, and Dearth could acquire any firearm overseas that he might lawfully possess here, the answer to the Court's fifth question defeats the logic of the District Court's opinion: just as non-resident Americans cannot receive a gun for anything other than a "sporting purpose" under Section 922(a)(9), neither may they bring any gun acquired overseas into the United States absent a "sporting purpose." The only way around the "sporting purpose" limitations is through an injunction, issued by an Article III court charged with reviewing legislation for constitutional compliance.

CONCLUSION

The decision below should be reversed.

Dated:   January 30, 2015          Respectfully submitted,

                                    /s/ Alan Gura
                                   Alan Gura
                                   GURA & POSSESSKY, PLLC
                                   105 Oronoco Street, Suite 305
                                   Alexandria, VA 22314
                                   703.835.9085/703.997.7665

                                   *Counsel for Appellants*

CERTIFICATE OF COMPLIANCE

This brief complies with the Court's Order of December 22, 2014, as to length, in that it is limited to 30 pages.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Corel Wordperfect in 14-point Century Schoolbook font.

/s/ Alan Gura
Alan Gura

CERTIFICATE OF SERVICE

I certify that on this 30th day of January, 2015, I filed the foregoing Supplemental Brief electronically with the Clerk of the Court using the CM/ECF System. I further certify that I will submit the required paper copies to the Court by 4 p.m. I further certify that counsel for Defendant-Appellee is a registered CM/ECF user and will be served via the CM/ECF system

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 30th day of January, 2015.


/s/ Alan Gura
Alan Gura

*Counsel for Plaintiffs-Appellants*